In re Wanda J. SMITH, Debtor.

**HOSPITAL AUTHORITY CREDIT UNION, Movant,**

v.

**Wanda J. SMITH, Respondent.**

No. 96–62833.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 24, 1997.

Craig B. Lefkoff, Atlanta, GA, for Movant/Creditor.

Mindi R. Sard, Richard H. Thomson, Clark & Washington, Atlanta, GA, for Respondent/Debtor.

## ORDER DISAPPROVING MODIFIED PLAN AND DENYING OBJECTION TO PROOF OF CLAIM

JAMES E. MASSEY, Bankruptcy Judge.

Wanda Smith seeks to modify her confirmed Chapter 13 plan to "surrender" to a creditor an automobile securing its claim. She asserts that the claim would thereby become unsecured and should be reduced to whatever deficiency might then remain. The creditor opposes the proposed modification, contending primarily that the confirmation order is res judicata on the issue of the claim's secured status and amount. The court disapproves the proposed modification but for a different reason. The Debtor does not have the collateral to surrender.

Ms. Smith filed a petition initiating this Chapter 13 case on February 22, 1996 and with it a Chapter 13 plan. Her plan provides in relevant part in paragraph 5(B):

5. The claims of secured creditors, whose claims have been filed and allowed shall be paid as follows:

B. *All other secured claims.* The rights of the holders of each other respective secured claims [sic] [i.e., each claim other than one secured by the principal residence] are hereby modified and each such secured creditor's claim shall be paid to the extent of the value of their [sic] security on a pro rata basis, or in such monthly amounts that are deter-

mined at the 341 meeting to be sufficient to protect the value of their [sic] collateral or in such monthly amounts that are approved or modified by the court at the confirmation hearing.

On March 18, 1996, Hospital Authority Credit Union timely filed a proof of claim for $3,629.55 secured by an automobile owed by Ms. Smith. At the creditors' meeting held on March 26, 1996, Ms. Smith testified that the vehicle was in good condition and that she intended to retain it.

Subsequent to the creditors' meeting, however, the vehicle began to have mechanical problems and, on or about May 1, 1996, she took it to an Aamco Transmission store for repairs. Ms. Smith did not notify Hospital Authority or the Trustee regarding the mechanical problems until after the date on which the confirmation order was entered.

The confirmation hearing was scheduled for May 15, 1996. Prior to the hearing, the Chapter 13 Trustee objected to confirmation because the Debtor had apparently not filed her 1994 federal income tax return, which the Trustee said hampered her ability to determine if the plan was feasible. There was no other objection to confirmation. The Trustee asked to report back to the court concerning the Debtor's ability to cure the objection. Thereafter, the Debtor provided the Trustee with her tax return. On July 11, 1996, the Trustee withdrew her objection to, and recommended, confirmation. There having been no other objection to confirmation, the court entered an order confirming the plan on July 12, 1996.

The Debtor discloses in her Brief in Support of Modification that on July 11, 1996, she informed her attorney about the mechanical problems with the vehicle and expressed doubts regarding her ability to pay the repair bill. About two weeks later, according to her brief, Ms. Smith concluded she could not afford to repair the automobile and expressed to her attorney a desire to "surrender" the vehicle.

On August 21, 1996, she filed a modification of the plan proposing to add to paragraph 9, labeled "OTHER PROVISIONS," this sentence: "Debtor is to surrender all

rights, title and interest in 1990 Nissan Stanza located at 4842 Covington Highway, Decatur, GA 30035, [the address of the Aamco Transmission store] to Hospital Authority Credit Union and treat any deficiency as general unsecured debt." The proposed modification would also reduce the dividend to unsecured creditors from 100% to 1%. Finally, the modification purported to amend the schedules to add Aamco as a creditor for a stated debt of $400, with no indication that it was disputed. Also on August 21, 1996, the Debtor filed an objection to Hospital Authority's proof of claim. Hospital Authority responded by objecting to the Debtor's proposed modification.

The modification states that Aamco holds a $400 claim, implying that the repairs have not yet been made. In its brief, however, the Hospital Authority contends that the repair bill is $1,500 plus $1,440 in storage fees through October 11, 1996, implying that the repairs have been made. Either way, the parties are in agreement that the Debtor does not have possession of the automobile. The court held a hearing on the creditor's motion to disapprove the proposed plan modification and the Debtor's objection to its claim on November 20, 1996. Neither party offered any evidence.

Section 1329 of the Bankruptcy Code governs modifications to confirmed Chapter 13 plans. The issue presented is whether the proposed modification to "surrender" an automobile by directing the creditor's attention to its location is permissible under section 1329. If it is, the Debtor contends that the creditor's allowed secured claim should be disallowed, leaving it with an unsecured claim for any resulting deficiency.

This is a two part inquiry. First, the Debtor must show that the proposed modification is one of the three types permitted under section 1329(a). Second, since section 1329(b)(1) makes section 1325(a) applicable to the modification, she must show that the modification meets the requirements of that section.

Under section 1329(a) of the Bankruptcy Code a debtor may propose limited modifications to a confirmed plan. That section provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

The Debtor contends that "surrender" of the vehicle to Hospital Authority would bring about a payment outside of the plan pursuant to section 1329(a)(3). Because the collateral would no longer be property of the estate, she asserts that its claim would cease to be an allowed secured claim. The Debtor's theory revolves around the opening words of section 506(a), which states: "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...." In full blossom, her argument is that "[a] creditor's claim is secured only to the extent that its lien attaches to property in which the estate has an interest and to the extent of that interest ... and where the estate no longer has any interest in the property, the claim can no longer be secured—there is no value in the estate to secure the lien and the lien, therefore, is void." Debtor's Brief in Support of Modification of Chapter 13 Plan, 9. Finally, she argues that any remaining deficiency would be treated as an unsecured claim because the lien would be void under section 506(d).

As mentioned, section 1329(b)(1) states that section 1325(a) applies to modifications. Hence, a part of the inquiry must focus on whether the proposed surrender of the vehicle meets the requirements of that section. Section 1325(a) states that a court shall confirm a plan if the conditions stated in its

subsections are satisfied. The three alternative conditions of subsection (5) are that:

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder[.]

Though not terribly refined, the Debtor's argument appears to be that "surrender" of her automobile is either permitted under section 1325(a)(5)(C) or may be viewed as a sort of payment under section 1329(a)(3) itself. A third possibility, reading Debtor's brief liberally, is that surrender of the vehicle would effect a distribution of the sort permitted by section 1325(a)(5)(B) with the same result.

An underlying assumption of the Debtor's argument, which she articulates only by referring to cases she says permitted similar dispositions of collateral, is that the timing of "surrender" or "distribution" makes no difference: it may be done in connection with plan confirmation or in connection with a modification. One might quarrel with that assumption. Indeed, the facts of this case suggest many variations on the theme, presenting a rich palette of scenarios testing the limits of modifications in a Chapter 13 case.

■ But let's stick to the facts of this case. The Debtor wants to turn over the automobile to Hospital Authority and thereby to eliminate its secured claim. Assuming that the statute permitted her to do so, whether as a payment under section 1329(a)(3) or as a distribution or surrender under section 1325(a)(5)(B) or (C), there is a fly in the ointment of modification. She does not have the vehicle to surrender. Someone else does. She cannot pay, distribute or surrender something that she can neither deliver nor tender. She offered no proof that telling

Hospital Authority where it could find the vehicle was a tender of possession or control.

■ The Debtor did not propose to abandon the vehicle. Section 1325(a)(5)(C) would be redundant, a needless repetition of section 554, if the phrase "surrender of such property to such holder" meant merely "abandonment." "Surrender" must mean something more. Some courts have held that to effect a surrender of collateral under section 1325(a)(5)(C), the debtor must have the creditor's agreement. *In re Service*, 155 B.R. 512, 514 (Bankr.E.D.Mo.1993); *In re Robertson*, 72 B.R. 2, 4 (Bankr.D.Colo.1985).

■ The operative phrase in section 1325(a)(5)(C) does not end with the word "property" but continues with the words "to such holder," making it plain that a debtor must at least tender possession or control of the collateral to the creditor, without regard to whether the creditor's consent is a further condition. Merely telling the creditor where it can find the collateral is not a surrender "to such holder."

■ The idea that a turnover of the vehicle effects a payment under section 1329(a)(3) suffers the same objection. To effect a payment, the Debtor must be able to transfer or at least tender something of value to Hospital Authority. She has offered no proof that she has or could do so. She can no more pay down Hospital Authority's claim by telling it where to find the vehicle than she could pay its claim by telling it to retrieve some other property from a third party, particularly one who may be asserting prior lien rights in that property.

■ The fact that Hospital Authority holds a lien against the automobile does not balance the equation. The existence of a security interest does not give rise under the Bankruptcy Code to an obligation on a secured party to take possession of, or to liquidate, collateral. Similarly, under applicable state law, which is Article 9 of the Uniform Commercial Code, a secured party is under no obligation to take possession of, or to liquidate, collateral.[1]

---

**1.** Upon a default, the secured party may choose    from a menu of nonexclusive alternatives. It

If the Debtor's theory is that she may effect a distribution under the plan pursuant to section 1325(a)(5)(B) by proposing to surrender the collateral, it likewise flounders on the fact that she is distributing nothing merely by telling the creditor the location of the collateral. (Leave aside other problems such as explaining why section 1325(a)(5)(C) on surrender would not be redundant, if distribution of the collateral itself, rather than payments from the trustee, could satisfy the secured claim.)

In arguing for her modification, the Debtor relies on *In re Rimmer*, 143 B.R. 871 (Bankr. W.D.Tenn.1992), *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989) and *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988). *Rimmer* and *Jock* are distinguishable because there was no suggestion in those cases that the debtors did not have possession of the collateral. The Debtor's reliance on *Stone* is likewise misplaced because in that case the creditor took possession of the vehicle and sold it.

The Debtor's argument concerning surrender deserves a further brief comment, because it is based on the mistaken assumption that if collateral somehow leaves the estate after a plan is confirmed, the creditor's claim is thereby rendered unsecured for purposes of distributions under the plan. Recall the Debtor's arguments based on section 506(a)'s description of an "allowed secured claim" as one involving a lien on property in which the estate has an interest. The fallacy in her analysis is that the plan applies to claims as of its effective date. Ms. Smith does not and could not plausibly argue that by virtue of its generic treatment of secured claims, paragraph 5(B) of her plan means that a claim is to be treated as secured only so long as the estate maintains an interest in the collateral or the collateral has value to the estate or to her. The plan contains no such provision and could not have and still have been confirmed under section 1325(a)(5)(B).

Obviously, a bankruptcy estate must have an interest in property at some point for an allowed secured claim to exist. Nonetheless, the mere fact alone that collateral ceases to be property of the estate after confirmation of a Chapter 13 plan does not retroactively convert an allowed secured claim into an unsecured claim, like a coach into a pumpkin on the midnight stroke of the debtor's decision to abandon or turn over collateral. If a secured creditor's rights under a confirmed plan were conditioned on the collateral remaining property of the estate, the general rule of section 1327(b), revesting property in the debtor on confirmation, would make no sense. Confirmation would act as a reagent destroying otherwise impregnable benefits plans bestowed on secured creditors as a proxy for their consent. It would be pointless to provide in a plan for payment of the value of collateral as of the effective date but impossible to confirm a plan without doing so. The Debtor's parallel attack based on her literal reading of 506(d) is so far off the mark that it deserves no comment.

Hospital Authority's defenses to the modification largely miss the mark, though for the reasons already given it hardly matters. Hospital Authority argues that "[i]n a Chapter 13 proceeding, once a plan is confirmed and value is placed on the collateral, the value cannot be changed." Brief in Opposition to Debtor's Modification, 3. That assertion, unrooted in facts, is at a minimum an over-generalization. In this case, neither the plan nor the confirmation order mentioned the claim, the vehicle or its value. Hospital Authority confuses the issue of claim allowance with the issue of confirmation. They are not the same issue.

Relying on cases such as *Matter of Abercrombie*, 39 B.R. 178 (Bankr.N.D.Ga. 1984) and *In re Banks*, 161 B.R. 375 (Bankr. S.D.Miss.1993), Hospital Authority further argues that a debtor may not reclassify a secured creditor's claim after confirmation

---

may seek a judgment. O.C.G.A. § 11–9–501(1). It may exercise the rights and remedies stated in the security agreement. O.C.G.A. § 11–9–501(2). "Unless otherwise agreed secured party has on default the right to possession of the collateral." O.C.G.A. § 11–9–503. "A secured party after default may sell, lease or otherwise dispose of any or all the collateral...." O.C.G.A. § 11–9–504(1). But the operative word is "may." Nothing in these sections or elsewhere in the U.C.C. requires a secured party to take any of these actions.

because the confirmation order is res judicata on the issue of secured status and amount of a creditor's claim. This court doubts that a res judicata analysis is the right one for a number of reasons.

■ The doctrine cannot bar further litigation relating to a possible modification pursuant to section 1329, even if the matter was adjudicated by the confirmation order; otherwise, section 1329 would be meaningless. If a proposed modification satisfies section 1329, it will be approved. If it does not, it will not. So recourse to the doctrine of res judicata to decide these cases is an unnecessary, if not pointless, exercise. Moreover, the order is being challenged in the same case, while res judicata generally applies to subsequent litigation. *But see Lester Mobile Home Sales, Inc. v. Woods (In re Woods)* 130 B.R. 204 (D.W.Va.1990) (res judicata applicable to a Chapter 13 confirmation order on a determination of jurisdiction). Finally, a confirmation order, though final and not subject to appeal, is subject to modification or even to being vacated under Rule 9024. For this reason, it is not a strong candidate as a litigation-ending adjudication with respect to a subsequent controversy in the same case.

This is not to say that a confirmation order can never bar subsequent litigation through application of the res judicata doctrine. *Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73 (9th Cir.1995) (res judicata barred creditor, which was resisting motion to compel it to accept payments on tax deficiency claim, from mounting a collateral attack on order confirming a Chapter 13 plan). The Eleventh Circuit has yet to consider the issue head on. In *Russo v. Seidler (In re Seidler)*, 44 F.3d 945, 948 (11th Cir.1995), however, it noted that "[t]he effect of plan confirmation is controlled by section 1327, which may provide a res judicata effect to the terms of a confirmed plan."

■ Section 1327(a) deals with the effect of confirmation in Chapter 13. It provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such

creditor has objected to, has accepted, or has rejected the plan.

That sounds a lot like res judicata. Nonetheless, an unappealed order confirming a Chapter 13 plan that purported to classify as unsecured the claim of a creditor that had filed a proof of a secured claim is not res judicata as to that creditor's lien rights where the debtor did not object to the creditor's claim. *Sun Finance Co., Inc. v. Howard (Matter of Howard)*, 972 F.2d 639 (5th Cir.1992). Thus, the application of the doctrine of res judicata to confirmation orders in Chapter 13 cases is problematical and must be examined very carefully.

Even if the doctrine of res judicata had general applicability to situations such as this one, it does not apply in this case. Under the doctrine of res judicata, or claim preclusion, a judgment in an earlier case bars subsequent litigation concerning the same cause of action, not only of the matters actually litigated and determined in the prior litigation, but also of every claim that might have been presented. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 n. 3 (11th Cir.1990). What did the confirmation order here adjudicate and what might it have adjudicated?

The confirmation order did not adjudicate the amount or status of Hospital Authority's claim, even though as of the scheduled confirmation hearing and the date on which the confirmation order was entered, that claim was deemed allowed. 11 U.S.C. § 502(a). The deemed allowance of that claim was a function of section 502(a), not a consequence of the plan or the confirmation order. The confirmation order adjudicated only that the plan met the requirements of section 1325(a).

Could the issue of the amount or status of the claim have been litigated? Again, no. The order could not have adjudicated Hospital Authority's claim because the plan raised no issue about the claim. The "cause of action" asserted in the confirmation process involved a body of facts different from the facts needed to prove that Hospital Authority held an allowed secured claim in the amount it asserted. It did not matter for purposes of deciding whether the plan should have been confirmed whether Hospital Authority's claim was fully secured, partially secured or

unsecured. The Debtor could have performed the plan any one of those ways, since she proposed to pay the unsecured claims in full. Thus, the issue of whether the plan should have been confirmed did not require resolution of the issue of whether Hospital Authority held a fully secured claim or depend on facts common to any issue concerning that claim's status or amount. For these reasons, the doctrine of res judicata is inapplicable to this case.

The Debtor poses the question of what might happen if she converted the case to one under Chapter 7. The court need not assume an event that may never happen in order to decide this dispute. Because the proposed plan modification does not provide that its components were intended to be severable, the court declines to consider the provision reducing the dividend on unsecured claims. If the Debtor desires to file a second modification related to the class of unsecured claims, she is free to do so. Finally, the use of a plan modification to add a post-petition creditor is an inappropriate and ineffective means to amend the schedules.

For these reasons, it is

ORDERED that the Debtor's objection to Hospital Authority's proof of claim is DENIED and that the Debtor's proposed modification of her plan is DISAPPROVED.