PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROGER SCHLOSSBERG,

*Trustee-Appellant,*

v.

JEAN BARNEY,

*Debtor-Appellee.*

No. 03-2081

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(CA-03-784-RDB; BK-02-20552-PM)

Argued: June 3, 2004

Decided: August 16, 2004

Before WIDENER and DUNCAN, Circuit Judges,
and Louise W. FLANAGAN, United States District Judge for
the Eastern District of North Carolina,
sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Widener and Judge Flanagan joined.

## COUNSEL

**ARGUED:** Roger Schlossberg, SCHLOSSBERG & DIGIROLAMO,
Hagerstown, Maryland, for Appellant. Lawrence Francis Regan, Jr.,
GARZA, REGAN & ROSE, P.C., Rockville, Maryland, for Appellee.

**OPINION**

DUNCAN, Circuit Judge:

Appellant Roger Schlossberg, Chapter 7 Bankruptcy Trustee ("Appellant"), challenges the order of the district court affirming the bankruptcy court in overruling his objection to an exemption asserted by the debtor, appellee Jean Barney ("Appellee").[1] Appellant argues that the district court erred in not allowing him to assert the rights of the Internal Revenue Service ("IRS") as a hypothetical creditor in objecting to Appellee's claim of exemption from the bankruptcy estate of certain property owned with her non-debtor spouse as tenants by the entireties. For the reasons that follow, we affirm.

I.

The facts underlying this appeal are not in dispute. On September 10, 2000, Appellee filed a voluntary petition for individual bankruptcy under Chapter 7 of the United States Bankruptcy Code in the Bankruptcy Court for the District of Maryland. Appellant was appointed Chapter 7 Interim Trustee, and has continued to serve as Trustee in the bankruptcy case. As Trustee, he sought to recover approximately $83,385 of unsecured, nonpriority debt Appellee owed to various credit card companies.

At the time the petition was filed, Appellee owned a single-family home with her spouse in a tenancy by the entireties in Silver Spring, Maryland. According to the documents filed with the bankruptcy court, the home was valued at $266,650, and was subject to a lien in the amount of $56,000. Appellee and her spouse therefore owned approximately $210,000 in equity in the home. Along with her petition, Appellee filed a Schedule C - Property Claimed as Exempt, seeking to exempt the home from the property of the bankruptcy estate under § 522 of the Bankruptcy Code.[2]

---

[1]The term "debtor" as used herein refers to a person who has filed a bankruptcy petition. *See* 11 U.S.C. § 101(13) ("'[D]ebtor' means person. . .concerning which a case under this title has been commenced. . .").

[2]11 U.S.C. § 522(b)(2) allows an individual debtor to exempt from property of the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety. . .to the extent that such interest. . .is exempt from process under applicable nonbankruptcy law."

Appellant objected to the attempted exemption of the entireties property, and sought to reach Appellee's interest in the home for the benefit of her individual creditors through § 544 of the Bankruptcy Code.[3] This section, often referred to as the "strong arm clause," accords to a trustee the rights and powers of a hypothetical "creditor that extends credit to the debtor" on the date of the bankruptcy petition. 11 U.S.C. § 544(a).

In *United States v. Craft*, 535 U.S. 274 (2002), the Supreme Court held that where federal taxes are owed by one spouse, and the spouse has property owned as tenants by the entireties with a spouse who had no delinquent tax liabilities, the IRS may attach the entireties property to collect the tax debt under 26 U.S.C. § 6321. Appellant argued that § 544(a)(2) allows him to stand in the shoes of the IRS as a creditor for purposes of reaching entireties property despite the exemption created by § 522(b)(2).

The bankruptcy court overruled Appellant's objection to the exemption on several grounds. The bankruptcy court noted that § 544(a)(1) conveys the rights of a judicial lienholder, whereas the lien described in *Craft* is statutory. Further, the bankruptcy court concluded that "[t]here are voluntary creditors and involuntary creditors, and in this situation, the IRS cannot be said to have extended credit." J.A. 93. Finally, the bankruptcy court found that Appellant's argument would have the effect of reading the tenancy by the entireties exemption, which has long been recognized by the Supreme Court and this circuit, out of the Bankruptcy Code.

---

[3]Section 544(a)(2) provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor *that is voidable by . . . a creditor that extends credit to the debtor* at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. . .

11 U.S.C. § 544(a)(2) (emphasis added).

Appellant appealed the decision of the bankruptcy court to the district court. The district court affirmed, finding that "[a] plain reading of § 544(a)(2) clearly indicates that the IRS does not extend credit as contemplated by the strong arm clause." J.A. 159. The district court adopted the distinction relied on by the bankruptcy court that where the IRS is a creditor, it is an involuntary one. Further, the district court noted that § 544 gives Appellant the rights and powers a creditor would have under state law. Even if the IRS were a creditor within the meaning of § 544, Appellant would still not be invested with the power possessed by an agency of the federal government, "powers that are not conferred by *state* law." J.A. 162.

Appellant filed a timely appeal, arguing that the district court erred in finding that he was not entitled to assert the rights and powers of the IRS in reaching property owned as tenants by the entireties by a debtor and a non-debtor spouse. The issue before us is whether § 544(a)(2) vests a trustee with the rights and powers of the IRS as a hypothetical creditor to penetrate the entireties exemption for the benefit of the individual creditors of the debtor. That the IRS is not a "creditor that extends credit" is dispositive of the issue, and we affirm on that reasoning.

## II.

When reviewing a decision by a district court sitting as an appellate court in bankruptcy matters, we apply the same standard of review as did the district court. *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. Ltd.)*, 99 F.3d 151, 154 (4th Cir. 1996). Accordingly, legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 351 (4th Cir. 1998). Here, the bankruptcy court made no findings of fact; the district court reviewed only its legal conclusions. Therefore, we review the decision of the district court de novo.

## III.

Section 541 of the Bankruptcy Code defines the property of the debtor that becomes the property of the bankruptcy estate. It includes "all legal and equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1). Notwithstanding this provision, a debtor may exempt certain property from the bankruptcy estate pursuant to § 522. Section 522 includes a list of allowed exemptions, *see* § 522(d), and also gives states the right to opt out of this exemption scheme, as Maryland has done. *See* § 522(b)(1); Md. Code Ann., Courts and Judicial Proceedings § 11-504(g). When a debtor's state elects to opt out, or the debtor chooses to exercise his exemptions under state law, the debtor may exclude from the property of the estate those items exempted by state or local law and by federal nonbankruptcy law. § 522(b)(2)(A). Under § 522(b)(2)(B), the debtor in an opt-out state may also exempt property owned as a tenancy by the entireties.

As the bankruptcy court noted, Maryland has long recognized the particular protections to be accorded tenancies by the entireties. *See*, *e.g.*, *Diamond v. Diamond*, 467 A.2d 510, 513 (Md. 1983) (citing *Lake v. Callis*, 97 A.2d 316 (Md. 1953); *Hertz v. Mills*, 171 A. 709 (Md. 1934); *McCubbin v. Stanford*, 37 A. 214 (Md. 1897)). A tenancy by the entireties is essentially a joint tenancy with rights of survivorship between the husband and wife rendered individually indissoluble by the common law theory that the husband and wife are one person. *Bruce v. Deyer*, 524 A.2d 777, 780 (Md. 1987). While both spouses are alive, a tenancy by the entireties may only be severed by divorce or joint action by both spouses. *Id.* at 781. Thus, under Maryland law, such property is exempt from process by creditors of an individual spouse. *Id.* at 781 n.2; *Beall v. Beall*, 434 A.2d 1015, 1021 (Md. 1981).

The instant case is not Appellant's first attempt to overcome a tenancy by the entireties exemption under Maryland law. In *Sumy v. Schlossberg (In re Sumy)*, 777 F.2d 921 (4th Cir. 1985), an individual Chapter 7 debtor claimed an exemption of entireties property owned with his non-debtor spouse. Unlike the property here, the Sumys' property was subject to claims by joint creditors of the debtor and the spouse. On those facts, we determined that the property was not immune from process under state law. We specifically noted that in Maryland, as is true in most states recognizing the entireties tenancy, creditors of only one spouse may not reach entireties property for the satisfaction of their claims. *Id.* at 925-26 (citations omitted). We pointed out, however, that "[t]he opposite is true for creditors to

whom both spouses are obligated: '[A] judgement obtained against both husband and wife arising out of a joint obligation may be satisfied by execution upon property held by the entireties.'" *Id.* (footnote and citations omitted).

Appellant here seeks to circumvent the well-recognized distinction between the rights of individual and joint creditors to reach entireties property on the basis of a novel interpretation of the Supreme Court's decision in *United States v. Craft*. Relying on, among other factors, the breadth of the federal tax code and the public policy favoring the collection of taxes, the Court in that case allowed the IRS to attach a federal tax lien to entireties property owned by an individual taxpayer having delinquent tax liabilities with a spouse who had no such tax liabilities. *Craft*, 535 U.S. at 288. Appellant extrapolates from *Craft* that if the IRS can reach entireties property owned by a debtor with a non-debtor spouse for the benefit of individual creditors, so can he as Trustee. He relies for his argument on the authority of the IRS to enter into forbearance agreements with taxpayers for the extended payment of tax liabilities under certain circumstances. *See* 26 U.S.C. § 6159. According to Appellant, the ability to enter into such forbearance agreements confers upon the IRS the status of a "creditor who extends credit," into whose shoes he may step under the strong arm clause. Despite some superficial appeal, Appellant's argument is fatally flawed.

We note, preliminarily, that every court to have addressed the applicability of *Craft* to trustees in bankruptcy under the Bankruptcy Code has rejected Appellant's argument, although in differing contexts.

*In re Kelly*, 289 B.R. 38 (Bankr. D. Del. 2003), involved an objection by a judgment creditor to an exemption under § 522(b)(2)(B), and not the assertion of a trustee's rights as a hypothetical creditor under § 544(a)(2). The bankruptcy court found *Craft* inapplicable in that context because of its reliance on the federal tax lien statute. The court noted that, in contrast to federal tax law, Delaware law does not permit a judgment against one spouse to attach to that spouse's entireties property. *Id.* at 43-44. The bankruptcy court in *In re Ryan*, 282 B.R. 742 (Bankr. D.R.I. 2002), considered the valuation of an individual debtor's equity interest in entireties property. The bankruptcy

court determined that under Rhode Island law, the debtor's expectancy interest in entireties property is 100% of the total equity in that property. The bankruptcy court stated that *Craft* did not address the issue of valuation, and went on to note that the Supreme Court gave no indication that its reasoning should be extended beyond federal tax law. *Id.* at 750.

*In re Knapp*, 285 B.R. 176 (Bankr. M.D.N.C. 2002), is more closely analogous to the facts in the instant case, though still not directly on point. The trustee in *Knapp* argued that the Bankruptcy Code gave him the same power to attach entireties property as *Craft* held the Internal Revenue Code gave the IRS. *Id.* at 181. The court disagreed, reasoning that federal tax creditors are "unique" because federal law permits them to "collect tax debts against property that most creditors cannot reach." *Id.* According to the court, *Craft* expressly relied on the IRS's status as the federal tax collector, and its authority as such under the federal tax lien statute, to hold that the IRS can reach a taxpayer's interest in entireties property. A bankruptcy trustee, by contrast, has the rights of a judicial lien creditor or bona fide purchaser, both of which can only assert the rights granted them under state law. *Id.* at 182-83. Because North Carolina law precluded creditors of only one spouse from reaching entireties property, the trustee was similarly so limited. *Id.* "*Craft* did not add the rights and powers of a hypothetical federal tax lien creditor to Section 544." *Id.* at 183.[4]

The foregoing cases, while instructive, do not squarely address Appellant's argument regarding his rights under the strong arm clause. We therefore turn to a consideration of whether the IRS can be analogized to a "creditor that extends credit" within the meaning of § 544(a)(2).

### A.

"In the absence of expressed Congressional intent, we must assume that Congress intended to convey the language's ordinary meaning." *Md. State Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d

---

[4]Although predictably critical of *Knapp*, Appellant points us to no decision adopting his position. Nor have we been able to locate one.

165, 169 (4th Cir. 1996). As the Bankruptcy Code does not define the phrase "extends credit," we consider the ordinary meaning of the words. According to the dictionary, "extend" is defined as "to postpone (the payment of a debt) beyond the time originally agreed upon." Random House Webster's Unabridged Dictionary 684 (2d ed. 2001). "Credit" is defined as "confidence in purchaser's ability and intention to pay, displayed by entrusting the buyer with goods or services without immediate payment." *Id*. at 473. The act of extending credit thus necessarily involves an element of volition, based on an assessment by the creditor of the borrower's willingness and ability to pay.

The attempt to apply such a definition to the relation of the IRS with federal taxpayers yields a result that is incongruous on its face. A tax liability is in no sense a debt for a good or a service the government entrusts to the taxpayer pending payment. The IRS does not choose whom to "entrust" with tax liabilities, nor can it always make an individualized determination of when to enter into a forbearance agreement with respect to the payment of those liabilities. *See* 26 U.S.C. § 6159(c) (stating that the Secretary of the Treasury is required to enter into installment agreements when the tax liability in question does not exceed $10,000 and certain other conditions are met).

In distinguishing between the extension of credit by a private lender and the accrual of tax liability, the Supreme Court has stated that "[t]he Government, by contrast [to a private lender that may decline the extension of credit], cannot indulge the luxury of declining to hold the taxpayer liable for his taxes. . . ." *United States v. McDermott*, 507 U.S. 447, 455 (1993); *see also Haas v. Internal Revenue Serv.*, 31 F.3d 1081, 1088 (11th Cir. 1994) ("The IRS is an involuntary creditor; it does not make a decision to extend credit.").

The legislative history of the Bankruptcy Reform Act of 1978 provides further support for the recognition of a distinction between voluntary and involuntary creditors. When discussing how proposed changes would affect tax claims in bankruptcy, the Senate Committee on the Judiciary stated that "the goals of rehabilitating debtors and giving equal treatment to private *voluntary* creditors must be balanced with the interests of governmental tax authorities who, if unpaid taxes exist, are also creditors in the proceedings." S. Rep. No. 95-989, at 13-

14 (1978) (emphasis added). Additionally, when discussing the rationale for changes in priorities, the House Report states that "[a] taxing authority is given preferred treatment because it is an involuntary creditor of the debtor." H.R. REP. No. 95-595, at 190 (1977).[5]

We agree with the district court that "it is clear from the plain definitions of 'extend' and 'credit' that voluntariness is implicit in the statute." J.A. 160. Appellant's contention that the voluntary/involuntary distinction regarding the genesis of the IRS's claim against a debtor is irrelevant has the effect of reading the words "that extends credit" out of the statute. Every creditor involved in bankruptcy proceeding, including the IRS, necessarily "has a claim against a debtor," § 101(10). If the claim is not volitional in any sense, the phrase "that extends credit" becomes surplusage. "Such a reading, therefore, is inconsistent with the principle that a court is obliged to 'give effect, if possible, to every word Congress used.'" *United States v. Williams*, 364 F.3d 556, 559 (4th Cir. 2004)(quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).

B.

Even if we considered the IRS a "creditor that extends credit," we do not believe that Congress intended a bankruptcy trustee to wield the extraordinary collection powers of the federal government. The Internal Revenue Code grants the IRS "powers to enforce its tax liens which are greater than those possessed by private secured creditors under state law." *Knapp*, 285 B.R. at 181 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 210 (1983)). This enforcement authority—including the ability to attach entireties property to secure

---

[5]Appellant argues that we are bound by our definition of "extension of credit" in *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126 (4th Cir. 1999), as including any "transaction that results in the lengthening of a debtor-creditor relationship" or any "allowance of additional time for the payment of debts." *Id.* at 132 (internal quotations omitted). We do not disagree. However, that decision involved a voluntary creditor, a law firm, seeking a determination that a debt arising from a settlement of its legal fees and costs was not dischargeable due to the debtors' fraud. It did not address the distinction between voluntary and involuntary creditors at issue here.

the delinquent taxes of but one of the co-tenants—is based on the IRS's status not as a creditor, but as federal tax collector:

> [T]he Government's right to seek a forced sale of the entire property in which a delinquent taxpayer had an interest does not arise out of its privileges as an ordinary creditor, but out of the express terms of [the Internal Revenue Code]. Moreover, the use of th[is] power . . . is not the act of an ordinary creditor, but the exercise of a sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself, and ultimately grounded in the constitutional mandate to lay and collect taxes.

*United States v. Rodgers*, 461 U.S. 677, 697 (1983) (internal quotations omitted). Accordingly, the Court's discussion in *Craft* of the IRS's authority under the federal tax lien statute would appear to be limited to the IRS as the federal tax collector, not as an ordinary creditor. *Cf. Knapp*, 285 B.R. at 183.

Nothing in the text or legislative history of the strong-arm clause suggests that Congress intended a bankruptcy trustee to be capable of invoking the "sovereign prerogative" to attach property that ordinary secured creditors could not reach. To read § 544 as granting such authority would lead to two anomalous results. First, it would eviscerate the exemption for tenancies by the entireties that the Bankruptcy Code explicitly recognizes.[6] *See* 11 U.S.C. § 522(b)(2)(B). Second, it

---

[6]At oral argument, Appellant contended that the federal tax lien statute relied on in *Craft* constitutes "applicable nonbankruptcy law" for purposes of § 522(b)(2)(B). He then argued that because a debtor may exempt property owned as a tenancy by the entireties from the bankruptcy estate pursuant to § 522(b)(2)(B) only to the extent that the property is "exempt from process under applicable nonbankruptcy law," the holding in *Craft* effectively disallows the exemption of entireties property. Because Appellant failed to raise this argument in his opening brief, we consider it waived. *United States v. Brower*, 336 F.3d 274, 277 n.2 (4th Cir. 2003). We pause to note, however, that Appellant's reading of "applicable nonbankruptcy law" would also effectively eliminate the entireties exemption from the Bankruptcy Code and thus suffers from the same analytical infirmity discussed above. Consequently, we would not accept Appellant's argument even if it were properly before us.

would eliminate the protections afforded to a non-debtor spouse under 11 U.S.C. § 363(h), which permits a trustee to sell entireties property for the benefit of *joint* creditors of the debtor and her spouse only under certain circumstances. *See* 11 U.S.C. § 363(h) (permitting sale of entireties property only if, *inter alia*, (1) partition in kind is impracticable, (2) sale of the estate's undivided interest would realize significantly less than sale free of the spouse's interest, and (3) the benefit of the sale to the estate outweighs the detriment to the spouse); *see also Sumy*, 777 F.2d at 927-30. Because we "'must account for a statute's full text,'" we cannot interpret one section of a statute in a way that would nullify the clearly worded language of other sections of the same statute. *Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997) (quoting *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (internal quotations omitted)).

Moreover, were Appellant able to stand in the shoes of the IRS, conceivably no state law exemption would continue to exist, despite the Bankruptcy Code's explicit recognition of exemptions under state law. Section 6334(c) of the Internal Revenue Code authorizes the IRS to levy upon any property or rights to property "other than the property specifically made exempt by [§ 6334(a)]." 26 U.S.C. § 6334(c). In other words, once the taxpayer's property interest is established for purposes of the federal tax lien statute, "state law is inoperative to prevent the attachment of liens created by federal statute in favor of the United States." *Drye v. United States*, 528 U.S. 49, 52 (1999); *see also Mitchell*, 403 U.S. at 204 (holding that Texas Homestead Law does not bar IRS from levying against such property). The Bankruptcy Code explicitly recognizes that property exempt from the estate remains subject to a federal tax lien. 11 U.S.C. § 522(c)(2)(B). Thus, if a trustee could assert the rights of a hypothetical federal tax lien holder, no state law exemption would exempt property from the estate, and § 522(b)(2)(B) would be superfluous. We are unwilling to read *Craft* to compel this result.

## IV.

Because we cannot conclude that the strong-arm clause of the Bankruptcy Code vests Appellant with the rights and powers of the IRS under federal tax laws to reach entireties property for the benefit of a debtor's individual creditors, the judgment of the district court is

*AFFIRMED.*