Filed:  June 7, 2007

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————

No. 06-1462
(5:05-cv-00190-BO; 04-00141-5-ATS)

———————

In Re: CHARLES A. WHITE, JR.; ANITA D. WHITE,

Debtors.

------------------------

INTERNAL REVENUE SERVICE,

Creditor - Appellee,

versus

CHARLES A. WHITE, JR.; ANITA D. WHITE,

Debtors - Appellants,

and

JOHN F. LOGAN, Chapter 13 Trustee,

Trustee.

———————

O R D E R

———————

The court amends its opinion filed April 23, 2007, as follows:

On page 7, last line of text before footnote 4 -- the words "the district court's" are deleted.

On page 8, first line of text -- the word "its" is deleted.

For the Court - By Direction

    /s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: CHARLES A. WHITE, JR.;
ANITA D. WHITE,

*Debtors.*

INTERNAL REVENUE SERVICE,

*Creditor-Appellee,*

v.

No. 06-1462

CHARLES A. WHITE, JR.; ANITA D.
WHITE,

*Debtors-Appellants,*

and

JOHN F. LOGAN, Chapter 13 Trustee,

*Trustee.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:05-cv-00190-BO; 04-00141-5-ATS)

Argued: March 15, 2007

Decided: April 23, 2007

Before WILLIAMS, MICHAEL, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Williams wrote the opinion, in which Judge Michael and Judge Shedd joined.

**COUNSEL**

**ARGUED:** Joseph A. Bledsoe, III, Raleigh, North Carolina, for Appellants. Karen Grace Gregory, UNITED STATES DEPART-MENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee. **ON BRIEF:** John T. Orcutt, Raleigh, North Carolina, for Appellants. George E. B. Holding, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina; Eileen J. O'Connor, Assistant Attorney General, Robert W. Metzler, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Charles A. White and Anita D. White ("the Whites") appeal from the district court's reversal of the bankruptcy court's order granting their bankruptcy petition and confirming their plan of reorganization under Chapter 13 of the Bankruptcy Code. As part of their plan of reorganization, the Whites proposed to satisfy a secured claim held by the Internal Revenue Service (IRS) by surrendering part of the property securing the claim to the IRS and by paying the remaining secured value through the plan. The district court agreed with the bankruptcy court that 11 U.S.C.A. § 1325 (West 2004 & Supp. 2006) — the Code provision governing the confirmation of a payment plan under Chapter 13 — in some circumstances permits a Chapter 13 debtor to partially surrender the property securing a claim. Nevertheless, the district court reversed the bankruptcy court's order and denied confirmation of the plan, concluding that the Whites' proposal to surrender property exempted from administrative levy by the IRS did not constitute a "surrender" under § 1325(a)(5)(C) because the Whites would retain the "surrendered" property.

We affirm the district court. The Whites' proposal to surrender personal property that the IRS cannot levy on and cannot otherwise collect without resort to litigation does not constitute a "surrender" under 11 U.S.C.A. § 1325(a)(5)(C). We therefore leave for another day the

question of whether § 1325(a)(5) permits a plan to be confirmed when a Chapter 13 debtor surrenders only part of the property securing a claim.

## I.

### A.

The facts of this case are undisputed. The Whites failed to pay fully their federal income taxes for the tax years 1994-2000 and 2002-2003. On October 30, 2003, the IRS filed a notice of tax lien in Wake County, North Carolina, with respect to the tax deficiencies for 1994-1996, perfecting a security interest for $7,006 in all of the Whites' property.

On January 13, 2004, the Whites filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of North Carolina. On schedules attached to the petition, the Whites listed the IRS as a creditor holding an unsecured priority claim of $1,203 and an unsecured general claim of $30,648. They did not, however, include the IRS on the schedule of secured creditors.

The IRS filed a proof of claim on April 30, 2004, in which it asserted a claim of $7,006 secured by certain of the Whites' property. Shortly thereafter, on June 8, 2004, the Chapter 13 trustee filed a motion to dismiss the Whites' bankruptcy case, contending that "[the Whites'] plan as filed is not feasible and, therefore, will not meet the requirements of 11 U.S.C. § 1325(a)(1). The Chapter 13 Plan is not feasible in that it fails to pay secured claims in full and does not provide dividends to priority and general unsecured creditors." (J.A. at 11.)[1]

### B.

To qualify for confirmation under Chapter 13, the Whites' plan must satisfy the requirements of § 1325(a) of the Bankruptcy Code.

---

[1]Citations to "(J.A. at ___.)" refer to the Joint Appendix filed by the parties in this appeal.

The Whites' treatment of the IRS's secured claim, in particular, is governed by subsection (a)(5).[2] Under this provision, a plan's proposed treatment of secured claims will be confirmed if (1) the secured creditor accepts the plan, *see* 11 U.S.C.A. § 1325(a)(5)(A); (2) the debtor invokes the so-called "cram down"[3] power, *see*

---

[2]Section 1325(a)(5) of the Bankruptcy Code provides, with exceptions not relevant here, that the bankruptcy court must confirm a plan of reorganization if

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that —

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder . . . .

11 U.S.C.A. § 1325(a)(5) (West 2004 & Supp. 2006).

[3]Under the "cram down" option, "the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien

§ 1325(a)(5)(B); or (3) the debtor "surrenders" to the creditor the property securing the claim, *see* § 1325(a)(5)(C).

On June 14, 2004, the Whites sent a letter to the IRS requesting that the IRS amend its proof of claim because the Whites had decided to surrender part of property securing the IRS's $7,006 claim. The letter stated that the Whites had decided to surrender their apparel; jewelry; certain of their household goods, including their stove and refrigerator; and their 1995 Plymouth Voyager minivan — property totaling $4,533 in value. The Whites intended to retain the remaining $2,473 in property securing the IRS's tax lien, including a 1995 Chevrolet Silverado truck and two IRA accounts. (J.A. at 12.) In the letter, the Whites indicated that the value of the surrendered property should be added to the IRS's unsecured general claim and subtracted from the IRS's secured claim, reducing the secured claim to $2,473. In other words, the Whites proposed a plan that attempts to invoke both the "cram down" and "surrender" options under § 1325(a)(5).

The IRS rejected the Whites' proposed amendment to its secured claim and instead, on June 21, 2004, filed an amended proof of claim reasserting the secured $7,006 claim and asserting an unsecured priority claim of $3,896 and a general unsecured claim of $19,478.

## C.

On September 24, 2004, the bankruptcy court denied the trustee's motion to dismiss the Whites' bankruptcy case. In denying the trustee's motion to dismiss, the court reasoned that 11 U.S.C.A. § 1325(a) did "not preclude [the Whites] from surrendering part of the IRS's secured claim, and treating the remaining portion of the claim as secured to the value of the retained collateral," though the court did note that in some circumstances it might be unfair to a secured creditor to allow a partial surrender of collateral. (J.A. at 21.)

---

securing the claim, *see* § 1325(a)(5)(B)(I), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, *see* § 1325(a)(5)(B)(ii)." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997).

On October 4, 2004, the trustee filed a motion to confirm the Whites' amended plan. The IRS then objected to confirmation of the plan on the grounds that (1) by proposing bifurcation of the IRS's secured claim, the plan failed to provide for full payment of the claim, in violation of 11 U.S.C.A. § 1325(a); (2) the plan was not feasible because the Whites proposed to surrender personal property, including their clothing and household goods, that was necessary for their continued generation of income and thus for their compliance with the plan; (3) the plan was proposed in bad faith because the Whites never actually intended to turn over the property to the IRS; and (4) the Whites were prohibited by 26 U.S.C. §§ 6311 and 6316 from paying their federal tax liabilities with personal property. The IRS also argued that it would be without any means of forcing the Whites to turn over the collateral securing its claim because the IRS is prohibited by § 6334 of the Internal Revenue Code (IRC) from levying on the "surrendered" personal property.

On December 9, 2004, the bankruptcy court denied the IRS's objection to the confirmation of the plan. The court affirmed its earlier ruling that partial surrender of the property securing a claim is permissible under § 1325(a)(5), but the court also went a step further and concluded that because the IRS asserted that it could not convert its tax lien on the secured collateral into payment because of the property's exemption from administrative levy, the IRS's claim was "not a secured claim, but . . . an unsecured claim." (J.A. at 47.)

D.

The IRS appealed the bankruptcy court's order to the district court, arguing that the bankruptcy court erred (1) in ruling that the IRS's claim for $7,006 was unsecured and (2) in holding that partial surrender of property in partial satisfaction of a secured claim is permitted under § 1325(a)(5). On March 6, 2006, the district court reversed the bankruptcy court's order, holding first that the IRS's $7,006 claim was not rendered unsecured by virtue of the IRS's inability to convert the lien into payment. *United States v. White*, 340 B.R. 761, 765 (E.D.N.C. 2006). The court stated that "the IRS's inability to levy on exempt property does not destroy the lien, or make the IRS's claim unsecured. . . . This is because a federal tax lien maintains value independent of the Government's ability to proceed against the property

by administrative levy, given the IRS's 'considerable arsenal of collection tools.'" *Id.* at 764. Accordingly, the court held that the IRS's claim "remains secured even where the IRS is unable to immediately seize property secured by a federal tax lien." *Id.* at 767.

The district court also reversed the bankruptcy court's ruling permitting the Whites' proposed surrender of exempted personal property to the IRS. While the court agreed with the bankruptcy court that "under certain circumstances a debtor may bifurcate a secured claim and follow more than one" of the options set forth in § 1325(a)(5), it found that the bankruptcy court erred in finding that "*any* surrender of personal property to the IRS was permissible under the circumstances of this case." *Id.* at 766 (emphasis in original). Noting that the bankruptcy court had accepted the Whites' proposal "despite the fact that there were substantial legal obstacles to the IRS's collection of the property," *id.*, the district court held that partial surrender of collateral is not an option "[i]f the debtor is prohibited from surrendering certain property by law," *id.* The court concluded that by merely proposing a surrender of exempted property, and not actually making the property available to the IRS, the Whites could not be said "to have 'surrendered' their property in any meaningful fashion." *Id.* at 766-67.

The Whites timely appealed.[4] We have jurisdiction over this appeal pursuant to 28 U.S.C.A. § 158(d)(1) (West 2006) (conferring jurisdiction on courts of appeals to review final decisions of district courts reviewing bankruptcy decisions).

## II.

### A.

"When reviewing a decision by a district court sitting as an appellate court in bankruptcy matters, we apply the same standard of review as did the district court," *Schlossberg v. Barney*, 380 F.3d 174, 178 (4th Cir. 2006), which means that we review

---

[4]The Whites do not appeal that portion of the district court's order reversing the bankruptcy court's reclassification of the IRS's claim as an unsecured claim. There is thus no question on appeal that the IRS's $7,006 claim is a secured claim.

legal conclusions de novo and factual findings for clear error, *id.* Because the facts of this case are undisputed, this case presents only questions of bankruptcy law, and our review is de novo.

For the Whites to prevail in this appeal, we must conclude both that their proposal constitutes a "surrender" under § 1325(a) and that § 1325(a)(5)'s cram down and surrender options are not mutually exclusive. The IRS maintains that we do not need to reach the subsidiary question of whether § 1325(a)(5) permits the Whites to pursue a hybrid option, consisting of both cram down and surrender components, because the Whites' proposal does not amount to a "surrender" as that term is used in § 1325(a)(5)(C). We agree with the IRS that the Whites' proposed "surrender" is no surrender at all under § 1325(a)(5)(C), and there is therefore no need for us to consider whether the statute permits the Whites to invoke both the cram down and surrender options to satisfy the IRS's secured claim.[5]

## B.

Although "surrender" is not defined in the Bankruptcy Code, *see generally* 11 U.S.C.A. § 101 (West 2004 & Supp. 2006), the word's general meaning is not a mystery. The operative phrase in § 1325(a)(5)(C), "surrenders the property securing such claim to such holder," makes it clear enough that the "surrender" spoken of entails the secured creditor ultimately holding all rights, including the right

---

[5]Both the bankruptcy court and district court concluded that § 1325(a)(5) in some circumstances permits a debtor to invoke both the cram down and surrender options. In reaching this conclusion, both courts focused on the use of the conjunction "or" between subsections (a)(5)(B) (cram down) and (a)(5)(C) (surrender). Because the Bankruptcy Code provides, as a rule of construction, that "'or' is not exclusive," 11 U.S.C.A. § 102(5) (West 2004 & Supp. 2006), the courts concluded that the plain language of § 1325(a)(5), with its use of "or" between the cram down and surrender options, permits a debtor to pursue one or the other or both. Both courts acknowledged that the Fifth Circuit reached the opposite conclusion in *In re Williams*, 168 F.3d 845, 847 (5th Cir. 1999) ("Although 11 U.S.C. § 102(5) states that '"or" is not exclusive,' it does not follow that Congress intended the word 'or' to create a fourth alternative [under § 1325(a)(5)]."). As noted above, we do not reach this question in this case.

of possession, in the property securing the claim. Thus, one prominent bankruptcy treatise has defined "surrender" in the § 1325(a) context as the "relinquishment of any rights in the collateral," including the right to possess the collateral. 8 *Collier on Bankruptcy* ¶ 1325.06[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005). This definition has been formulated by a number of bankruptcy courts called on to construe § 1325(a)(5)(C). *See, e.g.*, *Hosp. Auth. Credit Union v. Smith (In re Smith)*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997)(concluding that § 1325(a)(5)(C) makes plain that "a debtor must at least tender possession or control of the collateral to the creditor"); *In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993)(holding that "the term 'surrender' [under § 1325(a)(5)(C)] was contemplated by Congress to be a return of property and a relinquishing of possession or control to the holder of the claim"). Other legal and non-legal definitions of "surrender" also focus on the complete relinquishment of rights, *see Black's Law Dictionary* 1484 (8th ed. 2005) (defining "surrender" as "yielding to another's power or control" and "giving up of a right or claim"), *Merriam-Webster's Collegiate Dictionary* 1258 (11th ed. 2003) (defining "surrender" as "the action of yielding one's person or giving up the possession of something esp. into the power of another"), including relinquishment of the right to possession, *see, e.g.*, *Black's Law Dictionary* 1484-85 (defining "surrender" in the landlord-tenant context as the tenant's "relinquishment of possession before the lease has expired"), U.C.C. § 3-604(a) (2002) (stating that one way for an instrument-holder to discharge the obligation of a party to the instrument is "surrender," i.e., physical delivery or turn over, of the instrument to the obligated party). At the most basic level, then, the word "surrender" means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another.

The Whites propose to surrender to the IRS, *inter alia*, their apparel and a number of household goods, including their stove and refrigerator.[6] The IRC exempts this property from administrative levy

---

[6]The IRS also contends that the Whites' proposal to surrender living and household necessities (their clothing, stove, and refrigerator) renders their plan unconfirmable because without these items the Whites will not

by the IRS. *See* 26 U.S.C.A. § 6334(a) (West 2002 & Supp. 2006) (exempting from administrative levy "wearing apparel . . . necessary" for the taxpayer and his family and "fuel, provisions, furniture and personal effects [up to] $6,250 in value"). In other words, while the IRC grants the IRS the power to obtain a federal tax lien over "all property" of a debtor, *see* 28 U.S.C.A. § 6321 (West 2002 & Supp. 2006), the IRS cannot convert that lien into payment through levy on the exempted property that the Whites purport to surrender. The net result is that, in the absence of actual delivery or turnover of the property to the IRS, the Whites will retain the very property that they "surrendered" because, as the district court noted, the IRS faces "substantial legal obstacles" to collecting the property. *White*, 340 B.R. at 766.

The Whites concede that the IRS cannot levy on the property that they propose to surrender, but they note that § 6334(a)'s exemption from levy does not prevent the IRS from bringing a court action under § 7403 of the IRC to enforce its lien rights and convert the property to the payment of its claim. *See* 26 U.S.C.A. § 7403(a) (West 2002 & Supp. 2006) (stating that the Attorney General or his delegate may bring a civil action to enforce a tax lien "whether or not levy has been made"). While the Whites are correct that nothing bars the IRS from seeking judicial enforcement of the tax lien,[7] the fact that the IRS can

---

be able to make all the payments under the plan. *See* 11 U.S.C.A. § 1325(a)(6) (West 2004 & Supp. 2006)(stating that for a plan to be confirmed, the debtor must "be able to make all payments under the plan and to comply with the plan"). Without clothing, the IRS contends, the Whites would not be able to earn the disposable income that will be necessary for payments to the plan's creditors, and, according to the IRS, "if [the Whites] were to discontinue using their refrigerator and stove, they presumably would have to eat at restaurants — drastically increasing their monthly expenses, and drastically decreasing their disposable income." (Appellee's Br. at 27-28.) While the IRS's argument has credence, we need not countenance it here, given our conclusion that the Whites' proposal is not a "surrender" in any sense under the statute.

[7]Nothing legally speaking, that is. The IRS argues that there would be a significant cost-benefit disincentive to seek judicial enforcement of the tax lien in this case, given the likelihood that the litigation costs would exceed the value of the relevant property. We note this only to further illustrate the vacuousness of the Whites' proposed "surrender."

potentially collect the value of the property only through judicial enforcement underscores why, in the absence of actual physical turn-over of the property, the Whites' proposal is not a "surrender" under the statute. By insisting that the IRS is not foreclosed from obtaining the property by way of *adversarial litigation*, the Whites are all but conceding that their proposed surrender would not result in their relinquishment of all of their legal rights to the property, including the rights to possess and use it. Normally, "[w]hen a debtor surrenders the property [securing a claim], a creditor obtains it immediately, and is free to sell it and reinvest the proceeds." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997). Under the Whites' proposed plan, however, the Whites would not immediately turn the property over to the IRS. Instead, the Whites would retain the purportedly "surrendered" property until the IRS obtained a court judgment subjecting the exempted property to payment of the IRS's secured claim or, according to the Whites, until plan confirmation removed the bar to administrative levy on the property, thus allowing the IRS to levy against the property. The IRS certainly would not immediately, or even with minor delay, obtain the property so that it could sell it. The Whites' retention of property that is legally insulated from collection is inconsistent with surrender.

There is another problem with the Whites' argument. The Whites' proposal would result in the IRS obtaining possession of the property *after* confirmation of the plan, *see* Appellant's Br. at 25 (stating that "[u]pon . . . plan confirmation, the IRS is free to exercise its ordinary collection activities with respect to the property"), but as the district court noted, "[t]o treat a secured claim as unsecured once surrender has been *proposed* by the debtor is insufficient under [§ 1325(a)(5)]," *White*, 340 B.R. at 766. While a debtor's invocation of the cram down power under § 1325(a)(5)(B) permits a plan to be approved based on the plan's provision for payments to the secured creditor, the surrender option under § 1325(a)(5)(C) does not reference the plan. A fair reading of § 1325(a)(5)(C) is thus that the surrender must be completed *at or before* the confirmation of the plan. *See Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 533 n.8 (6th Cir. 2000)(noting that § 1325(a)(5)(C) "does allow a surrender of collateral, but only pre-confirmation"); 8 *Collier on Bankruptcy* ¶ 1325.06[4] (noting that a "fair rendition of section 1325(a)(5)(C) requires that the surrender of the collateral occur before or at confir-

mation, or at the effective date of the plan"). For this separate reason, the Whites' proposal does not "surrender" the property as required by § 1325(a)(5)(C).

### III.

Despite the clear signals throughout the course of this litigation that physical relinquishment of the property was the only potential way to effect a surrender, the Whites never turned the property over to the IRS. The Whites' brief makes clear that such relinquishment of possession was not their aim. *See* Appellant's Br. at 25 ("Upon relinquishment of the [Whites'] IRS exemption rights as a consequence of plan confirmation, the IRS is free to exercise its ordinary collection activities with respect to the property."). We therefore hold that the Whites' proposal, which entails their retention of the property that they purport to surrender to the IRS, does not constitute a "surrender" as that term is used in § 1325(a)(5)(C) given the significant legal hurdles that the IRS faces in collecting the property. If a secured creditor is legally foreclosed from immediately obtaining the property that a debtor proposes to surrender and the debtor does not in fact voluntarily relinquish all rights in the property, including the right to possession, to the secured creditor, then the debtor can in no way be said to have "surrendered" any of his rights in the property. It would be an odd thing indeed for us to hold that the Whites' proposal amounted to a "surrender" when, under their proposal, the Whites could have returned home after their confirmation hearing and cooked their evening dinner in the stove, stored their leftovers in the refrigerator, and worn the clothes that they had "surrendered" to the IRS. While the Supreme Court has noted that, from the secured creditor's perspective, "surrender and retention are not equivalent acts," *Rash*, 520 U.S. at 962, from our perspective, in this case they are more than just unequivalent: they are altogether contrary. The judgment of the district court is therefore affirmed.

*AFFIRMED*