UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: CYNTHIA ANN LOKEY,
*Debtor.*

---

CYNTHIA ANN LOKEY,

*Debtor-Appellant,*

v.

THE UNITED STATES DEPARTMENT OF
EDUCATION; SALLIE MAE;
EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

*Creditors-Appellees.*

No. 03-2125

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, District Judge.
(CA-03-289-2; BK-01-20298; AP-01-0057)

Submitted: January 30, 2004

Decided: May 13, 2004

Before MOTZ, MICHAEL, and DUNCAN, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

Cynthia Ann Lokey, Appellant Pro Se. Gary L. Call, Assistant United
States Attorney, Charleston, West Virginia; Steven Leftridge Thomas,

KAY, CASTO & CHANEY, Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Cynthia Ann Lokey appeals from the district court's order affirming the bankruptcy court's order determining that her student loans are not dischargeable in bankruptcy because she failed to establish that repayment of the loans would constitute an undue hardship, 11 U.S.C. § 523(a)(8)(2000). Because we find that the bankruptcy court's determinations were clearly erroneous, we vacate the district court's order and remand for further proceedings.

The following evidence was adduced at the hearing before the bankruptcy court on Lokey's complaint to determine dischargeability of approximately $73,000 in federally-insured student loans. Lokey is 33 years old and has no dependents. She graduated with a master's degree in psychology in the spring of 1999 and began working as a supervised psychologist for a private contractor with the State of West Virginia Mental Health Department. According to Lokey, in order to be eligible for licensure as a psychologist, one must have a minimum of five years of full-time clinical work under a licensed psychologist with at least 24 hours of clinical work per week or 15 hours of clinical work per week for ten years. Lokey's position was funded by a grant which was subsequently lost; at the time of hearing, Lokey was working in a case management position, acquiring approximately 69 clinical hours per quarter. In addition to the minimum number of clinical hours, licensure is dependent upon both an oral and a written exam.

Lokey lives alone in a one-bedroom apartment that she rents for $360 per month. Her total monthly living expenses, consisting of rent,

utilities, insurance, car payment ($260), gasoline, food, laundry, and $30 in miscellaneous expenses, amount to $1575.00, exclusive of any student loan payment.

Lokey testified that she receives two paychecks per month, the first in the net amount of $736.91 and the second in the net amount of $752.48. Including an anticipated tax refund of $500, Lokey estimated her average total net monthly income to be approximately $1650. Therefore, the undisputed evidence established that Lokey had approximately $75 available each month after paying minimal living expenses. Nevertheless, the bankruptcy court determined that Lokey had "income earning capability that you have only begun to explore," and that she had "the opportunity to continue to look at areas of expense reduction that have been pointed out here in connection with cross-examination." With respect to the latter finding, the bankruptcy court was referring to Lokey's testimony that she did not pursue a loan consolidation through the William D. Ford Program because the lowest payment available under that program (the income contingent plan) is $269 per month—a payment still beyond her ability to make each month. The bankruptcy court concluded that Lokey failed to establish "undue hardship" and denied her a discharge. The district court affirmed; Lokey noted a timely appeal to this court.

This court reviews the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 847 (4th Cir. 1999). Specifically, the bankruptcy court's factual findings are reviewed for clear error, and legal determinations are reviewed de novo. *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 206 (4th Cir. 1997). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *In re Green*, 934 F.2d 568, 570 (4th Cir. 1991).

The Bankruptcy Code excepts from discharge in bankruptcy a student loan debt, "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."

11 U.S.C. § 523(a)(8). To qualify as an undue hardship, the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). The debtor bears the burden of showing the existence of all three prongs. *See In re Faish*, 72 F.3d 298, 304-06 (3d Cir. 1995).

First, the debtor must establish "that [he] cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] if forced to repay the loans." *Brunner*, 831 F.2d at 396. "Where a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists from which a debtor may be discharged of his student loan obligations." *In re Correll*, 105 B.R. 302, 306 (Bankr. W.D. Pa. 1989). A debtor is not required to live at the poverty level in order to satisfy the first prong of the *Brunner* test. *Correll*, 105 B.R. at 306.

We find that, given the undisputed evidence of Lokey's income and monthly expenses, she cannot meet a minimal standard of living if she has to repay the full amount of her student loans. Lokey's monthly take-home pay averages $1613.51, leaving her no more than $75 per month for any unexpected expenses. Her monthly expenses are modest—she has no credit cards, cable television, cell phone, or home internet access. Moreover, she testified that she had been able to reduce some of her expenses since the time she filed her petition, by economizing on certain items. Lokey also testified that it was not

feasible for her to obtain a second job, given the unpredictability of her shifts and the nature of her work. Lokey also testified that the expense of sharing a two bedroom apartment was not likely any less than the $360 per month she pays for a one-bedroom apartment.

Under the second prong of *Brunner*, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. The bankruptcy court found that Lokey had "earning potential which she has barely begun to explore." However, we find that this finding is not based on any evidence presented. On the contrary, Lokey's testimony established that it is very unlikely that she will obtain licensure any time in the next several years. Moreover, her current job is funded by a three-year grant from the State of West Virginia. Given the budget crises faced by states all over the country, Lokey's income will not likely increase dramatically, if at all.

The third prong under *Brunner* requires "that the debtor has made good faith efforts to repay the loans." *Brunner*, 831 F.2d at 396. Lokey testified that she "tried to make several payments. Unfortunately, I just couldn't keep it up. There was no money left. So, I asked for forbearance and got that and then I found I still wasn't able to pay it." The bankruptcy court found that Lokey failed this prong because she did not pursue loan consolidation options available through the Ford Program. However, Lokey testified that she investigated the possibility of consolidating the loans but that the lowest payments available still would have been too high for her to be able to pay.

Based on the foregoing, we find that the bankruptcy court clearly erred in finding that Lokey failed to establish undue hardship. Accordingly, we vacate the district court's order and remand with instructions to remand the case to the bankruptcy court to determine what portion of Lokey's student loan is dischargeable under 11 U.S.C. § 523(a)(8). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

*VACATED AND REMANDED*