**EDUCATIONAL CREDIT MANAGE-MENT CORPORATION, a successor to Sallie Mae Servicing, Appellant,**

v.

**Frankie William GOUGE, Appellee.**

Civ. No. 1:04CV115.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 22, 2005.

Anna S. Gorman, Poyner & Spruill, Charlotte, NC, for Appellant.

David R. Hillier, Gum & Hillier, PA, Asheville, NC, for Appellee.

---

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the appeal of Educational Credit Management Corporation (Appellant) from the Order of the United States Bankruptcy Court finding that repayment by the Debtor of his student loan would constitute an undue hardship and allowing a discharge thereof.

### I. STANDARD OF REVIEW

The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the · findings are clearly erroneous. *Schlossberg v. Barney,* 380 F.3d 174, 177 (4th Cir.2004); *In re Deutchman,* 192 F.3d 457, 459 (4th Cir.1999). The conclusions of law of the Bankruptcy Court are reviewed *de novo. Schlossberg, supra.* Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682, 683 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In addition, due regard must be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses. *In re Harford Sands, Inc.,* 372 F.3d 637, 642 (4th Cir.2004); *In re Tudor Assoc., Ltd., II,* 20 F.3d 115, 119 (4th Cir.1994); Bankr.R. 8013.

### II. STATEMENT OF FACTS

The Appellant is a non-profit corporation which provides financial assistance to students enrolled in college. Answer of Educational Credit Management Corporation, *attached to* Designation of Record, filed August 3, 2004. As such, it is a student loan guaranty agency subject to the Federal Family Educational Loan Program, 34 C.F.R. §§ 682.200, *et seq.,* and provides guaranty services to the United

States Department of Education. *Id.* Appellant is the holder of the student loan debt incurred by the Debtor/Appellee, Frankie Gouge (Gouge). After Gouge filed for bankruptcy, he commenced an adversary proceeding to determine whether his student loan debt could be discharged.

Gouge testified at a hearing before Chief U.S. Bankruptcy Court Judge George R. Hodges on June 8, 2004. Transcript of Hearing, *attached to* Designation of Record. Gouge, who was 43 years old at the time, testified that he has suffered from depression intermittently since he was a teenager. *Id.*, at 4–5. He testified that he would work for a period of one to two years followed by periods when he was out of work due to depression. *Id.* During the late 1980's, Gouge determined to attend college in order to get a better job and he attended both Mayland Community College and Mars Hill College. *Id.* He also attended North Carolina State University for one semester, but due to depression, did not sustain a grade point average sufficient to remain enrolled. *Id.*, at 6. In the fall of 1990 while attending Appalachian State University, Gouge was hospitalized for depression. *Id.*, 7–8. In the spring of 1991, Gouge received a degree in applied mathematics from Appalachian and attended graduate school there. *Id.* Gouge testified that he was not successful in graduate school due to another serious episode of depression. *Id.*, at 9–10. However, his attorney stipulated prior to the hearing that Gouge had obtained a master's degree in psychology and mathematics. Issue, Witness, Exhibit and Stipulation List for May 19, 2004 Trial, *attached to* Designation of Record.

For the next five years, Gouge worked as a computer technician and salesman at Radio Shack in Newland, North Carolina, earning between $13,000 and $16,000 per year. Transcript, at 10–11. In 1998, he began working as a computer supporting technician at New River Behavioral Health Care in Boone, North Carolina. *Id.* At the time of the hearing, Gouge still had that position.

Gouge testified that his net monthly income was $2,600. *Id.*, at 13. Although he had applied for better paying jobs, he had not been successful in attaining such a position. *Id.*, at 19. However, his current employer had been very tolerant of his manic depressive episodes. *Id.*, at 20. After losing his home through foreclosure, Gouge lived in a tent on land that he was buying while he built a 500 square foot cabin. *Id.*, at 14–15. At the time of the hearing, he was still building the cabin where he and his wife lived. *Id.* Because of the ratio between Gouge's income and his student loan, the loan was often placed in forbearance or deferred and, in fact, Gouge never made any payments on the debt. *Id.*, at 21, 24. Gouge's attorney stipulated that at the time of the trial, Gouge was in default on the loan. Stipulation, *supra.* Gouge testified that based on the total amount of the loan, his payments would be around $400 or $500 a month. *Id.*, at 22: The balance of Gouge's consolidated student loan at the time of the hearing was $87,892.00. *Id.*, at 23.

Gouge filed for bankruptcy in March 2003 and listed $44,229 of unsecured debt on his petition which was subsequently discharged. *Id.* At the time Gouge filed his bankruptcy petition, he was separated from his wife and his monthly expenses were listed as $1,939. *Id.*, at 18–23. Those expenses increased when he and his wife reconciled and were $3,145 at the time of the hearing. *Id.* Additional monthly expenses included: (1) $99 for an on-line college program; (2) $90 for cable television, an increase from $35; (3) $150 for medical expenses,[1] an increase of $120; (4)

---

1. Gouge testified those bills would be repaid within a matter of months. *Id.*, at 29–30.

$606 for two car payments,[2] an increase of $280; (5) $125 for telephone service, an increase of $75; (6) $450 for building materials for the cabin; and (7) $200 for support provided for two step-daughters, ages 19 and 22, neither of whom reside with Gouge and both of whom are employed. *Id.*, at 24–32; Stipulation, *supra*. At the time of the hearing, Gouge's wife was not working due, in his opinion, to her mental condition. However, through 2003 she had worked and contributed to the household income. *Id.*, at 26–28.

While his family had an adjusted gross income of $57,000 in 2001, when his wife was still working, his income decreased in both subsequent years. *Id.*, at 27. In 2002 and 2003, Gouge and his wife took two separate cruises and a vacation in Orlando, Florida. *Id.*, at 32. At the time of the hearing, Gouge had a gross monthly income of $3,400 and a net monthly income of $2,600. *Id.*, at 33. His total expenses were $3,046. Stipulation, *supra*.

Gouge testified that he ended up in bankruptcy because his wife, who also suffers from a mental illness, had neglected their finances. *Id.*, at 34. She also failed to pay their mortgage resulting in the foreclosure of their home. *Id.*

Donald Suggs, the Area Director of New River Behavioral Healthcare, also testified at the hearing. Suggs testified that Gouge is a very talented computer network manager but has manic bouts followed by depression. *Id.*, at 36–37. Because New River's business involves mental health care, Suggs felt that New River offered a more tolerant and supportive environment to Gouge than would be provided in private industry. *Id.*, at 38.

Gouge testified that he was aware of alternative payment options but did not

feel he could afford to make such payments. *Id.*, at 26.

After hearing the evidence, Judge Hodges ruled that

[w]hile some expenses of Plaintiff as set forth in Plaintiff's testimony on the exhibits might be considered by some as being questionable, others which might be considered necessary by most people are not being incurred (for example, health insurance for Plaintiff's unemployed wife). There are no extravagances in Plaintiff's budget. Plaintiff's budget is minimal in many respects, specifically that of Plaintiff's housing expense, and Plaintiff is still short on a monthly basis, requiring $400.00 to $500.00 from his father to "make ends meet." While Plaintiff's mental condition is treatable, Plaintiff testified that the condition will "come and go" and never be fully resolved.

Order, filed June 14, 2004. Judge Hodges found that Gouge could not maintain a minimal standard of living if he were required to repay the student loan. *Id.* He also found that failing to discharge the loan would result in an undue hardship. *Id.*

## III. DISCUSSION

■ The issue presented by the Appellant is as follows: "Under the 'undue hardship' standard applicable to 11 U.S.C. § 523(a)(8), did the Bankruptcy Court err in discharging debtor's student loan debt owed to Educational Credit Management Corporation, where evidence showed that the debtor failed to minimize his expenses and failed to meet his burden of showing how his depression impaired his ability to work?"

Student loans, as a general rule, fall within the category of nondischargeable

2. Gouge testified that these cars would be paid for in three years. *Id.*, at 29–30.

debts and pass through the bankruptcy process unaffected. The federal government, under the Guaranteed Student Loan Program, "serves as guarantor of unsecured student loans and subsidizes interest payments on those loans." However, Congress has also provided that such government-guaranteed student loans are nondischargeable in bankruptcy proceedings unless the debtor can demonstrate that repayment of the loans would constitute an "undue hardship.". . . Although the bankruptcy code does not define "undue hardship," most courts have adopted a three-part test to determine whether a debtor has shown "undue hardship" within the meaning of [11 U.S.C.] § 523(a)(8)[.] Under this test, the debtor must establish (1) that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loans; (2) that additional circumstances indicate that his inability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans.

*In re Ekenasi,* 325 F.3d 541, 545–46 (4th Cir.2003) (quoting *Kielisch v. Educ. Credit Mgmt. Corp.,* 258 F.3d 315, 320 (4th Cir. 2001)) (other citations omitted). The burden of proving each of these is on the Debtor/Appellee. *In re Lokey,* 98 Fed. Appx. 938, 940 (4th Cir.2004) (citing *In re Faish,* 72 F.3d 298, 304–06 (3d Cir.1995)). "[C]ourts must consider each element in turn and, where one of the three elements is not met, the court must stop there with a finding of no dischargeability." *Educ. Credit Mgmt. Corp. v. Pope,* 308 B.R. 55, 59 (N.D.Cal.2004) (citing *Rifino v. United States,* 245 F.3d 1083, 1089 (9th Cir.2001)).

■ There are several factual issues which cause the undersigned concern; indeed, the Bankruptcy Court also noted the case was a close one. Transcript, at 48–50. Gouge has stable employment with an employer who is pleased with his performance despite his intermittent problems with depression. It is not likely, then, that his current income will be reduced. The record is devoid of any evidence that Gouge currently receives treatment for depression and it appears to be well controlled. *Lokey, supra.* Thus, it also does not appear that his current income will be impacted. Two years before filing bankruptcy, Gouge and his wife made significantly more income; and, until just prior to the bankruptcy, his wife continued to work. However, no evidence was presented that she was unable to work and contribute to the monthly income. Gouge, who has outstanding balance of $87,000 in student loans, testified that he is currently paying $99 per month for a on-line masters in business program. This is clearly not a necessary expenditure. And, Gouge provides $200 per month in support for two emancipated step-children as to whom Gouge has no legal obligation to provide any support. *Ekenasi, supra,* at 548–49; *U.S. Dept. of Health & Human Servs. v. Smitley,* 347 F.3d 109, 124 (4th Cir.2003). While his monthly budget is certainly not "frivolous," it does appear that this sum, at the least, is unnecessary. *Floyd v. Educ. Credit Mgmt. Corp.,* 54 Fed.Appx. 124, 125 (4th Cir.2002) (" 'Where a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists from which a debtor may be discharged of his student loan obligations.' " (quoting *In re Correll,* 105 B.R. 302, 306 (Bankr.W.D.Pa.1989))). Moreover, Gouge admitted receiving a $3,000 tax refund in 2004 and it is likely that he will receive such refunds in the future.

The Court finds that further development of the record is necessary to ascertain whether repayment of all or a portion of this debt will prevent him from maintaining a minimal standard of living for himself and his wife, based upon his current income and expenses. *In re Saxman*, 325 F.3d 1168, 1173 (9th Cir.2003) ("[B]ankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a) to partially discharge student loans."); *In re Mort*, 272 B.R. 181 (W.D.Va.2002); *In re Kapinos*, 243 B.R. 271, 273–76 (W.D.Va. 2000) (recognizing that although the Fourth Circuit has not yet addressed the issue, partial discharge may be granted to the extent that it would be an undue hardship for the debtor to have to pay that portion of the loan that is to be discharged).

It also appears that the current situation is not likely to continue for a significant portion of the repayment period. Gouge testified that his medical bills would soon be repaid and his car payments would be completed in two to three years. His wife had worked until a period either just before or just after the filing of bankruptcy. And, although Gouge claimed his wife's mental health problems prevented her from working, he testified that prior to their marriage, she had owned and operated her own business. These are additional issues which warrant further consideration.

Finally, it is noted that while the Bankruptcy Court found that Gouge had made a good faith effort to repay the loans, Gouge's attorney filed a stipulation admitting that he was in default at the time of the hearing. This presents another issue for clarification. The undersigned finds that a remand is warranted to allow the Bankruptcy Court to reapply the test and, in its discretion, to exercise its equitable authority to grant a partial discharge if it determines that repayment of the entire debt would constitute an undue hardship.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Order of the Bankruptcy Court discharging Debtor/Appellee's student loan is hereby **REVERSED** and **REMANDED** for further proceedings consistent with this Order.